LANDRY, Judge
(dissenting).
The conclusions herein reached by the majority on the question of proximate cause as relates to the defendant Consolidated Companies, Inc. and its insurer, the Travelers Insurance Co., and on the issue of causal relation between the herniaplasty performed upon plaintiff on October 27, 1956, and the subsequent myocardial infarction sustained by plaintiff compels me to dissent herein.
As I understand the majority opinion on the question of proximate cause, it holds the original opinion rendered herein was in error in concluding the engineer Thornton had the last clear chance to avoid the acci *818 dent. While I concur in the views of the majority of the Court on the proposition that last clear chance may not be availed of by a cotortfeasor to defeat recovery by a third party, I do not interpret the original opinion as holding the engineer was solely responsible for the accident herein on the basis of last clear chance. The allusion to last clear chance contained in the original opinion was made solely for the purpose of distinguishing between proximate and remote cause. It is elementary that even as among cotortfeasor’s negligence, to give rise to a cause of action, must be a proximate cause of the injury resulting therefrom. The rule that the negligence of an individual which renders him liable in damages must constitute a proximate as distinguished from a remote cause of injury is so well established as to hardly admit of argument. The original opinion handed down herein, in my judgment, held in effect that the employees of defendant Consolidated Companies, Inc., were free of negligence constituting a proximate cause of the injury and their negligence, if any, was only a remote cause thereof and, therefore, not actionable. The initial opinion, as I appreciate it, simply held that negligence of the engineer was the sole proximate cause of the accident. ■
In my considered judgment the evidence in this case fails to show the employees of Consolidated Companies, Inc., were negligent in parking the truck across the track iii view of the unusual and peculiar circumstances existing in this case. It is universally recognized and held that negligence is a matter of fact, which must be determined in each individual case, in the light of all attending circumstances. 65 C.J.S. Verbo Negligence § 1(5), page 312. Additionally, it is the law of this state that to give rise to a cause of action for injury resulting from alleged negligence, the conduct of the defendant must be the proximate as distinguished from the remote cause of the injury received. The generally accepted definition of and distinction between-proximate and remote'cause appears to be well stated in Am.Jur., Vol. 38, Verbo Negligence, Sec. 50, Page 695, as follows:
“Perhaps the best, as well as the most widely quoted, definition is the following: The proximate cause of an injury is that cause, which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. Other definitions which have received judicial approval are: that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, without which act or omission the injury would not have been inflicted; the cause which leads to, produces, or contributes directly to the production of the injury of which complaint is made; the efficient cause; the one that necessarily sets the other causes in motion, and brings about the result without the intervention of any force started and working actively from a new and independent source. Proximate cause is also defined as the primary moving cause, or the predominating cause, from which the injury follows as a natural, direct, and immediate consequence and without which it would not have occurred. A more elaborate definition is as follows: The proximate legal cause is that acting first and producing the injury, either immediately or by setting other events in motion, all constituting a natural and continuous chain of events each having a close causal connection with its immediate predecessor, the final event in the chain immediately effecting the injury as a natural and probable result of the cause which first acted, under such circumstances that the person responsible for the first event, should, as an ordinarily prudent and intelligent person, have reasonable ground to expect at the moment of his act or default that an injury to some person might probably result therefrom. Other definitions in *819 corporate the idea that in order to establish that a negligent act or omission was the proximate cause of an injury, it must be shown that the injury was foreseen or that it reasonably should have been foreseen as the natural and probable result of the negligence, although, as hereinafter stated, according to a view which is accepted by good modern authorities, the question whether the particular consequences of an act or omission were foreseen or should have been foreseen is involved not so much in determining whether an injury is the proximate result of such act or omission, as it is in determining whether the act or omission was negligent. Since proximate cause as an element of liability for negligence is not necessarily dependent upon nearness in time or distance, with which proximity is most readily associated, but is referred to as that cause without which the accident could not have happened, perhaps 'primary’ or ‘efficient’ would be more descriptive of the cause of which the law takes cognizance than ‘proximate’. A change in terminology, however, would not make the tests of proximate cause easier. It would still be necessary to follow back through a chain of circumstances, which are sometimes involved and perplexing, to ascertain the one of which it can be said ‘except for’ this the injury would not have occurred.
“By remote cause is intended that which may have happened, and yet no injury have occurred, notwithstanding no injury could have occurred if it had not happened; that cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof.”
Thus it would appear that the question of whether the action of the employees of defendant Consolidated Companies, Inc., in parking a truck so as to foul or obstruct the main line of the railroad was negligence constituting a proximate cause of the accident, is a question of fact to be decided in the light of the circumstances of record in the instant case. The record shows without contradiction that in pursuance of its agreement with the railway company, defendant Consolidated Companies, Inc., proceeded •for a period of approximately 30 years to use the right of way in question virtually at will as though it were the owner thereof. It is undisputed that on numerous occasions trains were required to either reduce speed or come to a complete stop in order to avoid striking trucks parked across the railway tracks. That this condition and situation existed to the knowledge and acquiescence of and without complaint from officials and employees of the railway company, is undisputed in the record. The engineer on the train in question was aware of this fact as was plaintiff himself. The locale of the accident was in a commercial district of the capital city of this state and the conditions attending the locale was such as to cry out for caution on the part of the operators of the train. Not only was the area one in which a very slow rate of speed was in effect for trains but approaching the locale from the south the engineer was faced with a curve which to some extent blocked visibility. Indeed one of plaintiff’s principal contentions seems to be that the curve was of such degree that it prevented the engineer from seeing the truck until he was in such close proximity thereto that he did not have time to stop. In my judgment this all the more graphically demonstrates the engineer’s negligence since it is shown he was familiar with the fact that trucks were parked on the tracks from time to time and if his view of said vehicles was blocked as the majority opinion maintains, this circumstance all the more called for extra caution on his part as he had every reason to anticipate the presence of an obstruction. We are not here concerned with the unexpected blocking of a railway track by a person at a place arid time wherein such impediment may not be reasonably anticipated on the part of the operators of a train but with an accident which oc *820 curred in a congested, commercial area of a metropolis where obstructions had occurred over a period of many years to the knowledge of the engineer in question which circumstances, in my opinion, are certainly to be considered in determining the alleged negligence of defendant Consolidated Companies, Inc. Considering all of the circumstances of the case at bar, it is my conclusion that the negligence of the employees of Consolidated Companies, Inc., if any, was a remote and not a proximate cause of the accident in question, the sole and only proximate cause thereof being the negligence of the engineer Thornton in failing to timely stop the train.
In finding that a causal connection exists between plaintiff’s disability which is admittedly due to the heart condition which developed subsequent to plaintiff’s operation, the majority view expressed herein relies very heavily upon the manifest error doctrine which holds that the finding of a trial court on an issue of fact will not be disturbed unless it appears manifestly erroneous. In my humble opinion, the majority in so concluding in the case at bar has carried the doctrine of manifest error to the extreme by in effect holding that so long as any evidence appears of record to support the finding of fact arrived at by the trial court, said finding should not be set aside. I believe that the serious error committed by the majority herein lies in their conclusion that a causal relationship between the operation and plaintiff’s heart condition is supported by a preponderance of the medical evidence. More specifically, I believe the error of the majority lies in the complete reliance upon the testimony of Dr. Williams which, as I shall hereinafter attempt to show, is contrary to the preponderance of the evidence on the issue contained in the record of this case. Dr. Williams was admittedly not a cardiologist. Upon plaintiff’s complaining of chest pains and vomiting in the hospital following the operation, Dr. Williams, thinking that plaintiff might be experiencing a myocardial infarction, summoned Dr. Reynolds, a cardiologist, in consultation. From this point on it was Dr. Reynolds and not Dr. Williams who became the attending physician insofar as plaintiff’s care and treatment relative to a possible heart condition was concerned. The majority relies very heavily upon the fact that Dr. Williams was the attending physician and, therefore, his opinion was entitled to greater weight than that of Dr. Reynolds. Such, however, is not borne out by the record for the testimony clearly shows that Dr. Williams made no attempt to diagnose or treat plaintiff’s alleged heart condition and that from the moment that he was called in consultation (which incidentally occurred on the same day plaintiff is supposed to have sustained the attack), Dr. Reynolds, a cardiologist, has had plaintiff constantly under his treatment and care and in my judgment in such circumstances, the testimony of Dr. Reynolds, is entitled to far greater weight than that of Dr. Williams. The opportunity for observation on the part of Dr. Reynolds was at least equal if not superior to that of Dr. Williams and his knowledge of cardiology is without doubt greater than that of Dr. Williams. We are not here concerned with the situation in which the testimony of a less skilled attending general practitioner is accorded greater weight than that of a specialist who only examines a patient for the purpose of giving an opinion. We have involved here circumstances wherein the specialist has been the attending physician and the medical authority with inferior knowledge has made no pretense of diagnosing or treating the patient yet the opinion of the latter is accorded greater weight than the former.
Although I concede the testimony of the two cardiologists, namely, Drs. Stotler and MacCurdy, is not equal in weight to that of Dr. Williams inasmuch as the former expressed opinions predicated solely upon examination and consideration of plaintiff’s electrocardiograms and hospital records and charts, their testimony is nevertheless in the record and entitled to some consideration.
*821 The testimony of Drs. Stotler and Mac-Curdy clearly shows (for medical reasons •which they explained) that in their opinion, trauma whether induced by vomiting, retching or otherwise cannot precipitate a myocardial infarction and that the infarction sustained by plaintiff was the result of his preexisting coronary insufficiency which was not aggravated by the surgery performed.
In my opinion the testimony of Dr. Reynolds, supported, corroborated and confirmed by that of Drs. Stotler and Mac-Curdy, represents the clear preponderance •of medical evidence on the question of the relationship between plaintiff’s operation and heart condition and the majority opinion sustains a finding of fact contrary thereto.
Although many decisions of trial courts on questions of fact have been supported and affirmed on the basis of the “manifest error doctrine”, I know of none in which such a result has occurred in a case where the finding was not supported by a preponderance of the evidence. In this connection it has been held that it is occasionally easier to perceive fallacies and inconsistencies in the record by a comparison of the various •portions of the transcribed testimony with other pertinent portions than it is to ac•curately observe and catalog them while listening to oral evidence of the various witnesses who testified during the course •of a trial. Owens v. Felder, La.App. Orleans, 35 So.2d 671. See also Anderson et al. v. Morgan City Canning Co., La.App., 73 So.2d 196.
I believe it is the established jurisprudence of this state that where a question of the preponderance of the evidence or burden of proof is presented, the appellate ■court in reviewing the action of a trial court must rely upon its own estimate of the testimony and make its own analysis thereof in determining whether the burden of proof incumbent upon plaintiff has been met. Succession of Fields, 222 La. 310, 62 So.2d 495, 498. In the Succession of Fields, supra; the following pertinent language appears :
“Counsel for defendant makes reference to 500 cases or more to the effect that a judgment of the trial court on questions of fact will not be disturbed on appeal unless manifestly erroneous. That is no doubt true when there is conflict in the testimony or the credibility of the witnesses is at issue, but in this particular case the question as presented before us is one of the sufficiency or the preponderance of the testimony rather than the credibility of the witnesses. In a situation such as this, it has been held that the trial court has no advantage over the appellate court in weighing the testimony and giving it proper effect. A case in point is that of Jordan v. Jordan, 175 La. 468, 143 So. 377. We regard the comments of the Court in that case as strongly pertinent here and conclude that the trial judge in this case manifestly erred * *
For the reasons herein set forth, I respectively dissent.
Before ELLIS, LOTTINGER, TATE, HERGET and LANDRY, JJ.